Good morning. May it please the Court, I am Kelly Kayser. I am attorney for the appellant Robert Riesgo. I will address the issue of whether Riesgo presented a specific and substantial evidence that the reasons given for Mr. Riesgo's termination were in fact pretext. As was more detailed in the briefs. Under Coleman, a plaintiff must produce enough evidence to allow a reasonable factfinder to conclude either the alleged reason for plaintiff's discharge was false or that the true reason was discriminatory. There is a variation on this, the same standard in Warren, where it says a plaintiff can prove pretext in two ways. Indirectly by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise unbelievable. And then a similar second prong regarding a showing of discrimination. I would like to focus on these two similar standards of proving a genuine issue with regard to pretext. There is no question that there is a real contraction of the employer's business going on here. And the reason it gives for terminating him as a salaried employee is that our sales business is taking a real hit after 9-11 and we can handle it with the purely commissioned salesman because if they don't sell, they don't get any commissions. But we've got a salaried person here and that's a constant drain on our treasury, so we're going to terminate his salaried position and put him in the same position as the others who work commissions only. That's inherently plausible. And then what makes that pretextual? Right. Let me answer that in two ways. One is that 9-11 is a red herring in this case. The the actual I kind of wondered what what it did to the jewelry business. But but whatever caused it, there seems to be a very significant contraction. And that that offer right there is is something that they look back in hindsight and say, listen, or or even looking ahead, saying perhaps there will be a reduction in sales. But defendants appellees never argued that. They never argued that we're anticipating a loss. What in fact they argued and specifically argued, if you look at Sultan's declaration in paragraph five, one of the reasons I selected for layoff or one of the employees I selected for layoff was Robert Riesco. I decided to lay off Robert Riesco due to his declining sales, one, and the declining sales and revenues caused by the loss of business. Those are the proffered reasons. Now, in in declining sales, what was the second one? Revenues caused by the loss of business, according to 9-11. I thought the reason the answer to the question of why it affected the jewelry business was that this was an unusual jewelry business, one that depended on tourism and that the notion was that people weren't going to be flying around. That may be the case, but it's simply that is something, again, in hindsight or something that they may anticipate, but it doesn't affect Robert Riesco at all. In fact, the fact I'm sorry. Why? Well, prior to 9-11, in fact, five to six weeks prior to 11 9-11, we know that Robert Riesco did not have his was not making sales because he was robbed and his jewelry was taken from and he was not provided with jewelry. So we know he wasn't making sales prior to 9-11. We also know that after 9-11, he wasn't making sales because he was instructed not to do so. So that takes us. And we also know the point. The point is that he see what's unusual about this case is that he was kind of a special purpose character to begin with. They had cut out a special deal for him, which was not what was being applied to everybody else. Everybody else was on commission and he wasn't. So all they were doing after this was saying, look, we can't have a special deal for you anymore because we are anticipating in general, without regard to you, a downturn in the business. And in fact, they laid off 19 people, as I understand it. And they didn't lay off any other salespeople because they didn't have any other salespeople. Your Honor, your argument is persuasive, but that's not what they argued. They argued this is the reasons why they laid him off. They didn't say we are anticipating sales. They said his declining sales and the declining sales of 9-11. That was the reason we decided to lay him off. And in fact, they told him on October 1st that they were changing his position. So he had no sales for which to be judged. Well, but that's what the second part is, the first part. So then we get to this very sort of nice, weird question, which is that the lawyers then backed off that entirely. That's right. And said, you know, Judge, forget it. That's not what we're saying. That's right. But the people who made the decision did say it at the point they made the decision or not at the point they made the decision in their depositions. Is that right? That's correct. Absolutely. I mean, that was absolutely the decision given. And then once we we argued it in our opposition to summary judgment, things changed. And those things that changed, those are the exact inconsistencies that are essential. What you're saying is the decision makers were making up stories. And the fact that the lawyers then realized that and decided to back off, it doesn't diminish the fact that they were making up stories. That's right. They were still the proffered reasons for his termination. Absolutely. And that was never discussed is another one reason is declining sales. And you're saying, well, declining sales because they wouldn't let himself. That's exactly right. And because they didn't give him his product for which he could sell prior to 9-11. So in in all fairness, in reply, they say defendant appellees say that, well, it's not it had nothing to do with anything we escorted. It was outside forces. Well, still, the outside forces are still Sultan Company. I mean, they are the puppet masters here. They're the ones who created these outside forces who created the Sultan Company, defendant company. Let me try to get this clear again, their letter to him in the first place. That due to this economic conditions and damage to the business, we're laying off employees. And we're going to put you on commission. Now, tell me again, what what's my argument pretextual about my argument is Mr. Riesco gives his reasons plainly and concisely in his declaration. Those reasons, we're talking about what he said in the letter, laid him off. Usually, usually the phony reason thing is when you laid me off, you told me ABC and now you're coming up with new reasons. This sounds like. The consistent reason we were going to have an independent sales. Force, we're taking you off your special thing, and that's the very beginning, right? Correct. And in fact, that would be a consistent reason had they have stuck with that throughout. But they did not. They said his declining sales. They changed. They changed from we're anticipating something to happen. So we're going to lay you off. Another question. There are cases out there that say, you know, where the very same people who hired somebody said, this guy's wonderful. We're going to hire him or the ones that terminated him just a couple of years later. Is that you better have a very strong case to overcome the obvious inference that they're not discriminating because of age. They didn't when they hired you. They're not doing it when they fired you. What about what do you do? Well, I agree. And I believe that we have a strong case. And then I would additionally say that the person that hired them that hired Mr. Riesco was Mr. Sultan and the person that fired him was ultimately Mr. Sultan. But with the advice of Mr. Riesco's direct supervisor, Mr. Sato. So there were extenuating circumstances regarding his termination. Thank you. Thank you. And we'll have the men here so when you return. Good morning. My name is Tracy Nation. I represent the defendants, appellees here at the Sultan Company. The decision that the Sultan Company made to affect the reduction in force and also not fill other spots was totally approximately 30 positions that were affected, 19 actual layoffs. It was not all about Robert Riesco and his sales. His sales were down, which is why there was confusion, I think, in the moving papers initially in the court below. The sales were down, not all to his fault. Ergo, not performance based. Sultan did do some things, open up retail stores that would impact whether JCPenney would carry their line. That's in the record. That's not the fault of Robert Riesco. Mr. Sultan makes a decision based on the information available to him at the time. Sales were down prior to 9-11. Obviously, they were impacted greatly by 9-11. As the court noted, jewelry sales probably was not a hot ticket item in the weeks following 9-11, particularly where those sales are going to take place in areas such as Southern California, Hawaii, and other tourist destinations. So Mr. Sultan made that decision. The evidence submitted to the district court is consistent with the reasons given Mr. Riesco some four years ago. And coincidentally, it happens to be four years ago today that the actual conversion from salary to independent contractor happened. I just realized that sitting here this morning. Yes, ma'am. Go ahead, I'm sorry. The same actor inference does apply. Eddie Sultan is over 40 years old. Paul Sato was 47. That's in the record at the time in 2001 when the decision was made. And it's difficult for us now to sit here and second guess four years later the decision that that company made as to how to save itself or its year. And the evidence is undisputed that they were bleeding cash. That's in the words of Mr. Sultan. Of course, they don't have to be bleeding cash. They have to think they're bleeding cash. They have to think they are. And if they overreacted, who are we to decide whether they did or they did not? If we have to put ourselves back to that day, which is difficult to do. Remember, putting aside the mourning and the loss, the Monday when we were thinking about what was happening to stock markets, what was going to happen? They actually didn't do anything until October 1, right? I'm sorry? Did they act immediately or they acted like a few weeks later? They began to plan after September 11 of what to do, and then they phased these things in. And with Mr. Riesco, they just converted him back to what he was before. They had given him special treatment. He was, the evidence is undisputed that Mr. Sultan said he's hardworking, he's charismatic. They liked him. And to soften the blow, they gave him expanded territory, higher commission rate. What they did not do, though, is pay his salary, and they did not reimburse travel expenses. I know that this is not directly relevant, but what were the conditions of his leaving a year or so later? Did he not renew? Did they not renew? They just did not renew the contract a year later. That's all. What about the various, it seems to me that there are basically two bases on which they're claiming pretext. One is the raising and then the dropping of performance concerns. And the other are the various comments that were made over a period of time. So perhaps you can comment on the second. On the comments? Yes. I'd be happy to do that. The only person that made any comments at all, well, they actually were persons, is Mr. Riesco, his lovely wife, Sharon, and Paul Sato. And the evidence before the court is that they had a very jovial relationship. Paul stayed in their home. They went to trade shows together, Vegas and other places. And they chatted a lot. There was some chit-chat about retirement, and there's nothing inherently wrong about that that shows a bias, as the district court noted. There's plethora of cases on that. If I live long enough, I'm going to be talking about retirement, maybe with my partners. And so the district court properly handled that. The comment about, do you think you want to keep doing this at your age, it's undisputed, and they continue to miscite this in the record, that the comment occurred right after Mr. Riesco and his wife were brought out of concern. And that was the context of that statement. They also continue to miscite a statement that was made in 2002, back when, at this time, Mr. Riesco was in his independent contractor status, about, you know, can you cover this amount of territory at that age? They continue to miscite that. It is undisputed. They have admitted in their briefs below that that comment occurred in 2002. So what we have here is a benign sort of comments about, I'm older than you, I called you at 11 a.m., and you might have had to sleep in. And the district court said, it's just not enough. It's not a direct evidence. They are just stray comments. They have to be specific and substantial and somehow related to the decision to conduct the termination or the change in status of Mr. Riesco. They were made well in advance of September 11th. Kagan. And the last point, I think the case law, I mean, if you had somebody who was making rampant racist remarks in the workplace and then made a decision that was alleged to be based on race, I thought that that was sufficiently perverted that it could amount to – it could get over a summary judgment on pretext, even if there was no direct connection between the comments and the discharge, for example. Well, I briefed that in the papers below, and the district court did not address that. But the reality is, it's such a sinister presence to talk about race in the workplace. It doesn't have that – age remarks and comments does not rise to that level of animus that one might find if it's comments based on someone's race or ethnicity or even religion. Those cases are cited in my moving papers. And so even though it can be some ageist remarks that might get us over the prima facie hurdle, which they did, they still have to rise to the level of specific and substantial to show some true animus. This was a company that didn't cut this man. They allowed him to keep doing what he'd been doing with the company since 1995, and they actually loaned him $5,000. That's why the fact that a year later they let him go is arguably of some relevance as to what they were really doing a year earlier, because by doing that, really, they were taking him outside the protection of the age discrimination laws, right? Once he became an independent contractor, he wasn't covered any longer. That may be, but we would have to get into what his performance was after 2001 and 2002. I understand that, but it would be plausible. I mean, I just don't think it's a very strong argument to say that they really were changing his status in a way that they were just leaving him in the same place. It ended up meaning that he was let go in the meanwhile, and I'm not getting into the period what was true in the middle. Right. Well, and there is some evidence. I think that Mr. Esco's feelings were hurt, and so what that did to his performance is not before the court, and I don't know. And I do know that Eddie Sultan and Paul Sato liked him, and they did what they could to soften the blow, taking away that salary by giving him $5,000 in a loan to get him to the holidays. This is not a picture of two men who hired him knowing he was, I think at the time that they hired him as an independent contractor, he was 55, he was 54. When they hired him as an employee in 1999, he was 58, and the testimony before the court is that I wanted to work 10 more years, and Ed Sultan said, that's great. Nobody knew what was going to happen so many years later. So I would submit that there is nothing here for a reasonable jury to confine that Ed Sultan and Paul Sato acted with an age animus against their friend, Robert Riesco. It's very unfortunate as to what happened to him in this context, and to happen to many others across the country. And there's nothing to suggest that their decision to conduct that layoff and also not renew other people, which affected 30 people, is pretextual. If there's no more questions, I will submit. Thank you very much. Thank you. Counsel. Let me first address the reasons why Mr. Riesco was taken on as a permanent employee as opposed to being on contract prior to this all happening. In Defendant Apelli's evidence, they cite that the reason that he was hired was simply based on numbers. It was based on the economic factors that Sultan had gone over. In other words, they hired him for business reasons. He was making more money as a contract person than he would be making as an employee, which of course is the opposite of what they're arguing why he was terminated. With regard to the comments, the comment after the robbery that at your age should you be carrying this jewelry would have never been made to a younger person. And in fact, they didn't provide him with jewelry right away. And in... But it was in fact made a couple of days after the event. Absolutely. Regardless, it's still... I thought there was a dispute about that, but there's not. Well, I believe in that we had made a mistake earlier on and we admit that, yeah. There was a comment in Apelli's answering brief that says, there are simply no facts supporting a view that Riesco's age was used as a proxy for any purpose. There is no implied comment suggesting Riesco was too old, too weak, or lacked motivation. Well, that's not the case. In Riesco's deposition in the submitting papers, when asked, okay, at that time that Paul, this is Paul saying, I was telling you that they were letting you go. Did you believe it was because of your age? I believed it was, yes. I believed it was because of my age. You know, you just hit a chord here. When Paul came back from vacation that year, he said, I visited Monterey in Northern California. He said, I think there is more potential up there. Do you think you have the energy to travel up there and take care of all those people? Again, that's a comment that's specifically related to his age. I thought that was not later? That was not? This is his deposition testimony. And when does he say that occurred? It happened in between the time that he was robbed and the time in October 1st. Okay. Thank you very much. The question we had on that timing, I think, was that Sato made a trip to Northern California in 2002. And when did he say this? I'm not sure if that's their argument, Your Honor. I'm not sure. I think that was in there somewhere. Thank you. The case of Riesco v. Sauten Company is submitted. And we are on to the last case of the day, which is Price v. Sauten.
judges: Canby, Fernandez, Berzon